**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

SS INNERPRIZE, LLC, a Colorado Limited Liability Company, and GREGORY DON
HREHOVCSIK, an individual,

      Plaintiffs,

v.

MARTIN E. BUTTON, LLC d/b/a COSDEL INTERNATIONAL TRANSPORTATION, a
California Limited Liability Company, and PASSPORT AUTO LOGISTICS, LLC, a Missouri
Limited Liability Company,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

## INTRODUCTION

1.      This is a bailment case against two professional automotive transportation

companies for damage to a custom-fabricated piece of automotive art known as Imagine.  The

damage occurred while Defendants were transporting Imagine to and from the Kingdom of Saudi

Arabia ("KSA") where it was featured in the 2019 Riyadh Automotive Auction and Salon ("the

KSA Show").  The outbound journey to KSA originated in Colorado.  The inbound journey from

KSA concluded in Colorado.  Because this case involves the intrastate and international

transportation of cargo, Plaintiffs' claims are governed by the Carriage of Goods by Sea Act

("COGSA"), 46 U.S.C. §§ 30701, *et seq.*, and the Carmack Amendment to the Interstate

Commerce Act, 49 U.S.C. §§ 14706, *et seq*.

## PARTIES

2.      Plaintiff SS Innerprize, LLC ("Innerprize") is a Colorado limited liability

company with its principal place of business in Colorado.  Innerprize was formed in 2013 to

complete the custom build of a 1957 Chevrolet Model 150 purchased by Plaintiff Gregory Don

Hrehovcsik in 2012, to tour the completed custom vehicle in the United States, and to sell the

completed custom vehicle for a profit.  From 2013 – 2018, Innerprize invested approximately

$800,000 to complete the custom build of the car purchased by Plaintiff Gregory Don

Hrehovcsik in 2012.  Innerprize is the title owner of the custom-fabricated 1957 Chevrolet

Model 150 Hardtop CP, Serial No. VC57T143700, known as Imagine.  Imagine won 16

prestigious automotive awards in 2018 and 2019, including the 2018 Detroit Autorama Don

Ridler Memorial Award ("Ridler Award"), which is the highest honor for custom car building in

the United States.

3.      Plaintiff Gregory Don Hrehovcsik ("Hrehovcsik") is a dual citizen of the United

States and Mexico.  At all times relevant, Hrehovcsik was domiciled in Gunnison County,

Colorado.  In 2012, Hrehovcsik purchased an unfinished custom built 1957 Chevrolet Model 150

for $250,000.  In 2013, Hrehovcsik partnered with two other investors to form Plaintiff SS

Innerprize, LLC for the purposes described in ¶ 2.

4.      Defendant Martin E. Button, LLC d/b/a Cosdel International Transportation

("Cosdel") is a California Limited Liability Company with its principle place of business in

California.  Cosdel was hired by the organizers of the KSA Show to transport Imagine from the

U.S. Port in Long Beach, California to the KSA Port in Jeddah, and then onto the KSA Show

venue in Riyadh, KSA. Similarly, Cosdel was hired by the organizers of the KSA Show to

transport Imagine from Riyadh to the KSA Port in Jeddah and then on to the U.S. Port in Long

Beach, so it could be returned to Alamosa, Colorado by Defendant Passport Auto Logistics, LLC

after the KSA Show had concluded.

5.      Defendant Passport Auto Logistics, LLC ("Passport") is a Missouri Limited

Liability Company with its principal place of business in Missouri. Passport was hired by the

organizers of the KSA Show to transport Imagine from its point of origin in Alamosa, Colorado

to the U.S. Port in Long Beach, California so it could be shipped overseas by Cosdel. Similarly,

Passport was hired by the organizers of the KSA Show to transport Imagine from the U.S. Port in

Long Beach, California to its final destination in Alamosa, Colorado upon Cosdel's return of the

vehicle to the U.S. Port in Long Beach after the KSA Show had concluded.

<b>JURISDICTION AND VENUE</b>

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question), § 1332 (diversity of citizenship), and § 1333 (maritime law). Plaintiff's

claims are brought pursuant to COGSA and the Carmack Amendment. These federal statutes

preempt state law bailment claims and provide the exclusive remedy for Plaintiffs' damages

against Cosdel and Passport. Neither Plaintiff is a citizen of the same state as either Defendant.

The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court may properly exercise personal jurisdiction over Cosdel. At all times

relevant, Cosdel knew it was transporting cargo owned by Innerprize and garaged in Colorado.

Cosdel entered into a Customs Power of Attorney with Innerprize knowing Innerprize was a

Colorado limited liability company. Cosdel was compensated for the international transportation of Imagine, which is owned by Innerprize and garaged in Colorado.

8. This Court may properly exercise personal jurisdiction over Passport. At all times relevant, Passport knew it was transporting cargo owned by Innerprize and garaged in Colorado. Passport arranged and was responsible for the receipt of Imagine in Colorado for the outbound journey to KSA. Passport delivered Imagine to Colorado at the conclusion of the inbound journey from KSA. Passport was compensated for the international transportation of Imagine, which is owned by Innerprize and garaged in Colorado.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). At all times relevant, Hrehovcsik was domiciled in this judicial district. At all times relevant, Innerprize had its principle place of business in this judicial district. Imagine was built in this judicial district. Imagine is titled and garaged in this judicial district. This judicial district was the point of origin for the outbound trip to KSA during which Imagine was damaged. This judicial district was the point of delivery for the inbound trip from KSA during which Imagine was further damaged.

## FACTUAL ALLEGATIONS
### Imagine

10. Imagine was built in Alamosa, Colorado over a period of five years. The custom build project was led by Johnny L. Martin ("Martin") of Johnny Martin Enterprises, LLC. The creation of Imagine was a collaborative effort between Hrehovcsik and Martin.

11. Imagine was not built to drive; it was built to show, win, and sell at peak value. Imagine has no visible fasteners, wiring, or bolts by design. The component parts and interior

features are all handmade.  Imagine is a highly valuable one-of-a-kind piece of automotive art. The value of Imagine is rooted in the quality of its artisanship and pristine showpiece character.

12.     Imagine debuted at the 2018 Detroit Autorama where it won the Ridler Award. The Ridler Award is considered the most prestigious American award for custom car building. Candidacy for the Ridler Award is open only to new custom vehicles, which have never before been shown at any public event.  The Ridler Award is reserved for the one vehicle each year that best exemplifies automotive creativity, engineering, and quality workmanship.

13.     Immediately following the 2018 Detroit Autorama, Martin toured Imagine on behalf of Innerprize in the United States.  Over the next year, Imagine won the following automotive awards:

a.      2018 World of Wheels, Chicago, Illinois
- Legend Cup (Best in Show)
- Select 6
- Top 20
- Best Custom
- Best in Class, Radical Hard Top
- Outstanding Display

b.      2018 Salt Lake City Autorama
- Wasatch Cup (Best in Show)
- Best Custom
- Best in Class, Radical Hardtop
- Outstanding Display

c.      2018 GoodGuys, Des Moines, Iowa
- Custom Rod of the Year Finalist

d.      2018 Tri-Five Nationals, Bowling Green, Kentucky
- Top 25

e.      2018 Early Iron Show, Alamosa, Colorado
- Rodder's Choice (Best in Show)
- Top 15

f.  2018 GoodGuys, Loveland, Colorado
- Pinkee's Builder's Choice

g.  2018 SEMA, Las Vegas, Nevada
- Top 10 Battle of the Builder's Young Guns
- Mother's Shine Award

h.  2018 GoodGuys, Scottsdale, Arizona
- Custom Rod of the Year Winner

i.  2018 World of Wheels, Houston, Texas
- The Millwinder Award (Best in Show)
- Top 7
- Best Custom
- Best in Class (Radial Hard Top)
- Outstanding Display

j.  2019 Grand National Roadster Show, Pomona, California
- Al Sloanaker Award (Best in Show)
- Stitch of Excellence Award (Sid Chavers)
- Best Custom
- Best in Class (Radical Hard Top)
- Outstanding Display

k.  2019 World of Wheels, Birmingham, Alabama
- Vaughn Early Award (Best in Show)
- Fabulous 5
- Best in Class, Radical Hardtop
- Outstanding Display

l.  2019 Darryl Starbird Show, Tulsa, Oklahoma
- Go For the Gold Winner (Best in Show)
- Fine 9

m.  2019 Autorama, Detroit, Michigan
- Hall of Fame Circle of Champions (Hrehovcsik and Martin)

n.  2019 World of Wheels, Chicago, Illinois (ISCA Finale)
- ISCA Summit Racing Equipment Custom Champion of the Year
- ISCA Summit Racing Equipment Grand Champion of the Year
- Jack Trepainier Legacy Award (Martin and Ryan Martin)

o.    2019 Draggins Car Show, Canada
- Best of the Best in Canada

14.    Imagine is pictured here at the March 2019 World of Wheels automotive show in
Chicago, Illinois, where it was named the ISCA Summit Racing Equipment Custom Champion
of the Year and the ISCA Summit Racing Equipment Grand Champion of the Year.



15.    By mid-2019, Imagine was at its peak value, and Innerprize was seeking to sell it
for a profit.  In July 2019, Innerprize and Martin learned of the KSA Show scheduled to take
place in November 2019.  Innerprize entered Imagine for consideration in the KSA Show.
Imagine was accepted into both the automotive salon and live auction portion of the KSA Show.

## The 2019 Riyadh Automotive Auction and Salon

16.    From November 21-26, 2019, KSA held the inaugural Riyadh Automotive Auction and Salon ("the KSA Show"). The KSA Show was part of a larger effort and investment by the KSA government to establish KSA as a first-class global events destination.

17.    The KSA Show was designed to feature 450 vehicles from the United States. The KSA Show was expected to draw 250,000 attendees from all over the world. The KSA Show was advertised as one of the largest car shows in history and as the largest car show in the history of the Middle East.

18.    One highlight of the KSA Show was the live automotive auction on November 23, 2019. The KSA government attracted an elite inventory of vehicles for the live auction event by incentivizing the participation of vehicle owners and their car handling teams with free airfare to KSA, hotel accommodations in KSA, and fully insured vehicle transportation to KSA.

19.    The KSA Show was hosted by Sela, the commercial arm of the KSA General Entertainment Authority. The KSA General Entertainment Authority is an agency of the KSA government.

20.    Sela engaged the Bonnier Corporation ("Bonnier") to develop, organize, and present the KSA Show. Bonnier is an American media and events company based in Florida. Bonnier was responsible for bringing vehicles, vendors, celebrities, and content to the KSA Show. Bonnier approved Plaintiffs' application for entry of Imagine into the automotive salon. Bonnier acted as Plaintiffs' main contact for all things related to the KSA Show.

21. Bonnier hired Worldwide Auctioneers ("WWA") to facilitate the live automotive auction and to select cars for participation in the live auction. WWA is a vintage motorcar auction and appraisal company based in Indiana.

22. WWA approved Plaintiffs' application for entry of Imagine into the live auction. Innerprize entered into a written consignment agreement with WWA authorizing WWA to sell Imagine on behalf of Innerprize at the live auction portion of the KSA Show.

23. Bonnier and WWA knew, prior to transporting Imagine to KSA, that Plaintiffs valued this vehicle at $2,000,000. WWA created and disseminated marketing materials for the KSA Show featuring Imagine and representing Imagine as an "amazing radical custom creation" that was "built at a cost of over $2,000,000."



24. Because Imagine was selected for inclusion in the live auction, Sela and Bonnier hosted Hrehovcsik, Martin, and Martin's adult son, Ryan Martin ("Ryan"), in KSA. Sela and/or Bonnier arranged and paid for Hrehovcsik's, Martin's, and Ryan's travel to and from KSA. Sela

and/or Bonnier arranged and paid for Hrehovcsik's, Martin's, and Ryan's lodging in KSA. Sela and/or Bonnier arranged and paid for transportation of Imagine to and from the KSA venue. Sela and/or Bonnier arranged and paid to insure Imagine while it was in transit to and from the KSA venue and while it was onsite at the KSA Show.

25. Sela and/or Bonnier engaged Defendant Passport to provide intrastate transportation within the United States of those vehicles selected for inclusion in the KSA Show. Passport was responsible for transporting Imagine from its point of origin in Alamosa, Colorado to the U.S. Port in Long Beach, California. Following the conclusion of the KSA Show, Passport was similarly responsible for transporting Imagine from the Port in Long Beach, California back to Alamosa, Colorado.

26. Upon information and belief, Sela and/or Bonnier paid Passport for its vehicle transportation services.

27. Sela and/or Bonnier engaged Defendant Cosdel to handle the international transportation of vehicles selected for inclusion in the KSA Show. Cosdel was responsible for transporting Imagine from the U.S. Port in Long Beach, California to the KSA Show venue in Riyadh, KSA. Following the conclusion of the KSA Show, Cosdel was similarly responsible for transporting Imagine from the KSA Show venue in Riyadh back to the U.S. Port in Long Beach.

28. Upon information and belief, Sela and/or Bonnier paid Cosdel for its vehicle transportation services.

29. Plaintiffs entered into a Customs Power of Attorney Agreement with Cosdel to enable Cosdel to transport Imagine internationally. Plaintiffs completed and provided to Cosdel a Temporary Export Letter to US Customs declaring that the value of Imagine was $2,000,000.

30.     Sela and/or Bonnier engaged a local KSA handling agent called the Kanoo Group to move cars as needed during the KSA Show within and around the KSA Show venue.

31.     Upon information and belief, Bonnier was responsible for directing, supervising, and/or overseeing the Kanoo Group's handling of vehicles at the KSA Show.

32.     Prior to the KSA Show, Bonnier provided to Hrehovcsik a document titled Riyadh Car Show Insurance Summary.  That document is attached to this Complaint as Exhibit A.  Upon information and belief, Exhibit A was created by Bonnier.  Exhibit A describes the anticipated chain of custody for Imagine during international transportation.  Exhibit A explains how the condition of Imagine was to be preserved and documented during each portion of the journey to and from the KSA Show.

33.     Exhibit A states in pertinent part:

Every and any vehicle is fully insured for all risk and any damage and all loss.

*       *       *

Passport is responsible for any transport related to damages from the time the vehicle is picked up until the time it is dropped off at the port warehouse within their insurance limits.

*       *       *

The All Risks coverage requires that the designated road carrier in the USA, which is Passport Transport, prepares a comprehensive condition report upon collection of the vehicle, signed by you[] or your designated vehicle manager, and the driver.  You will be given a copy at the time of collection.

This report will then be compared to the receiving condition report prepared at the warehouse where it will be delivered for containerization.  Warehouse personnel will complete and sign this as will the driver.

We request photographs of the car to be taken at the warehouse too, and any exceptions will be noted.

*       *       *

We are also using numerous brand new 5,000 lbs ratchet straps to secure the vehicles within a minimum of four per vehicle, in addition to wooden blocking and bracing around the wheels.  These ratchet straps will be used in Riyadh to secure the cars that are returning to you in the same containers they are exported in.

A numbered security seal will be applied to the container doors at the warehouse after loading, and the same seal should be intact when the container is opened in Riyadh.  This allows us to confirm that the container has not been opened or tampered with in transit. We believe the containers will not be opened by Saudi Customs in Jeddah, and they will be trucked to Riyadh unopened.  In Riyadh every container will be opened and inspected, and an out turn report prepared.  Any exceptions or damage noted will be noted and photographed, and should this occur we will alert you via email immediately upon our knowledge of the same.

At the point the vehicles are inspected and unloaded, our [] policy will cease to be in effect and the local handling agent the Kanoo Group will apply their policy for the duration of the event.

Upon the conclusion of the event, should your vehicle be returning to you in the USA, it will be loaded and secured back into the container using our new straps, by Kanoo the local handling agent, and the containers will follow the reverse route back to you. Condition reports will [b]e completed when the cars are loaded in Riyadh, unloaded on the USA warehouse, [and] reloaded onto a Passport truck delivered to you.

*       *       *

Cosdel International Transport is the leading international logistics provider for moving high value vehicles around the world and ocean.  Founded in 1960, and specializing in collector automobiles since 1982, [Cosdel has] shipped hundreds of thousands of vehicles to and from every corner of the planet.

*       *       *

[I]nsurance is in place from the moment the cars touch down in [KSA] until the cars leave [KSA].

*       *       *

We hope this gives you comfort that your vehicle is ensured by premium producers at each step of the way.

## Imagine Was Damaged During the Outbound Journey to KSA

34.     Passport hired a Colorado-based company, known as O'Leary's Truck Service, LLC ("O'Leary's"), to transport Imagine from Colorado to California.

35.     On September 9, 2018, O'Leary's took possession of Imagine from Johnny Martin's Automotive Trim and Rod Shop in Alamosa, Colorado.  The O'Leary's truck driver loaded Imagine into a car transport truck trailer and issued a bill of lading to Martin.  That bill of lading is attached to this Complaint as Exhibit B.

36.     The O'Leary's bill of lading reflects that Imagine was in "car show perfect" condition on September 9, 2019, the date it left Plaintiff's possession.  A video documenting the condition of Imagine upon pick up by O'Leary may be accessed at:

https://drive.google.com/file/d/1Ixfa8uUBHhlHXsbWUntgx3hpQnstQI-S/view?usp=sharing

37.     The O'Leary's bill of lading is not a through bill of lading to KSA.  The O'Leary's bill of lading lists Schumacher Cargo Logistics ("Schumacher") in Gardena, California as the shipment's final destination.  Upon information and belief, Schumacher is located 16 miles for the U.S. Port in Long Beach, California.

38.      The O'Leary's bill of lading was signed by the Schumacher receiver on September 12, 2019.  The O'Leary's bill of lading states that Imagine was inspected at and/or by Schumacher.  The O'Leary's bill of lading states that Imagine sustained no damage during the Alamosa, Colorado to Gardena, California portion of the outbound journey to KSA.

39.     The O'Leary's bill of lading is the only shipping document in the possession, custody, or control of Plaintiffs and their agents relating to the outbound journey to KSA.  No

one acting on behalf of Plaintiffs ever saw, signed, or received any shipping or inspection documents for the overseas or KSA ground portion of the outbound journey to KSA.

40.     Plaintiffs have requested from Cosdel copies of "all documents known to it or its agents related to the valuation, shipping, loading, unloading, inspection, handling, and storage of Imagine for any and all legs of travel to and from Riyadh[,]" including "any and all bills of lading, other shipping or handling contracts, valuation reports, inspection reports, shipping manifests, and photographs or videos of damage."

41.     Despite this request, Plaintiffs have received no information from Cosdel regarding the shipping or inspection of Imagine during the outbound journey to KSA.

42.     Upon information and belief, Imagine was still in "show perfect" condition when Cosdel took possession of it in California.

43.     Upon information and belief, on or after September 12, 2019, Cosdel loaded or caused to be loaded Imagine into a shipping container in California.  Upon information and belief, Cosdel loaded or caused to be loaded such shipping container onto a seaborn vessel at the U.S. Port in Long Beach, California bound for the KSA Port in Jeddah.   Upon information and belief, Cosdel transported or caused to be transported Imagine from the U.S. Port in Long Beach, California overseas to the KSA Port in Jeddah.

44.     Upon information and belief, Cosdel unloaded or caused to be unloaded the shipping container holding Imagine from the seaborn vessel at the KSA Port in Jeddah.  Upon information and belief, Cosdel then loaded or caused to be loaded that same shipping container holding Imagine onto a truck bound for the KSA Show venue in Riyadh.  Upon information and

belief, Cosdel transported or caused to be transported by truck the shipping container holding Imagine from the KSA Port in Jeddah to the KSA Show venue in Riyadh.

45. Cosdel delivered Imagine to the KSA Show venue on November 22, 2019. Imagine's journey from Colorado to KSA lasted 74 days.

46. Hrehovcsik and Martin were present at the KSA Show venue when Imagine was unloaded from the shipping container. They observed and documented the following ten items of damage to Imagine once it reached the KSA Show venue:

     a.     tail light, pushed inside bezel, passenger side;

     b.     scratches on lower passenger quarter;

     c.     cracks on passenger lower quarter;

     d.     gouges on driver lower rear quarter wheel opening;

     e.     chip on passenger mid rear quarter;

     f.     upper center grill (top) cracked;

     g.     top of front passenger fender cracked;

     h.     scratches on top of rear quarter passenger;

     i.     cracks and lifting on driver inner fender (engine compartment); and

     j.     cracks and lifting on passenger inner fender high (engine compartment).

47. All 10 items of damage identified in ¶ 46 occurred while Imagine was being transported by Cosdel from the U.S. Port in Long Beach to the KSA Show venue in Riyadh.

48. Hrehovcsik and Martin notified Bonnier and WWA of the 10 items of damage set forth in ¶ 46 immediately upon observation and documentation of the same.

49.     Despite the 10 items of damage identified in ¶ 46, Bonnier and WWA featured Imagine in both the live auction and auction salon portions of the KSA Show.

50.     Imagine did not sell at the KSA Show.

51.     Imagine required return transportation from the KSA Show venue in Riyadh back to Alamosa, Colorado.

**Imagine Was Damaged During the Inbound Journey from KSA**

52.     Per the flight arrangements made by Bonnier, Hrehovcsik, Martin, and Ryan all returned to the United States at the conclusion of the KSA Show.  Martin and Ryan departed Riyadh on November 27, 2019.  Hrehovcsik departed Riyadh on November 28, 2019.

53.     Cosdel and Passport were responsible for returning Imagine to Colorado.

54.     Imagine had not been transported out of Riyadh or even removed from the KSA Show venue when Hrehovcsik departed KSA on November 28, 2019.  Neither Plaintiffs nor their agents were present when Imagine was loaded onto a shipping container or departed Riyadh to begin the inbound journey from KSA.

55.     No one acting on behalf of Plaintiffs ever saw, signed, or received any shipping or inspection document for the KSA ground or overseas portion of the inbound journey from KSA.

56.     Plaintiffs have requested from Cosdel copies of "all documents known to it or its agents related to the valuation, shipping, loading, unloading, inspection, handling, and storage of Imagine for any and all legs of travel to and from Riyadh[,]" including "any and all bills of lading, other shipping or handling contracts, valuation reports, inspection reports, shipping manifests, and photographs or videos of damage."

57.     Despite this request, Plaintiffs have received no information from Cosdel regarding the shipping or inspection of Imagine during the inbound journey from KSA.

58.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs do not know on what date Imagine was removed from the KSA Show venue in Riyadh or arrived at the KSA Port in Jeddah.

59.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs do not know on what date Imagine departed the KSA Port in Jeddah on a seaborn vessel bound for the U.S. Port in Long Beach, California.

60.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs do not know on what date Imagine arrived in California.

61.     Upon information and belief, at some time after November 29, 2019, Bonnier oversaw the loading of Imagine onto a shipping container at the KSA Show venue.

62.     Upon information and belief, at some time after November 29, 2019, Cosdel transported or caused to be transported a shipping container holding Imagine from the KSA Show venue in Riyadh to the KSA Port in Jeddah.

63.     Upon information and belief, Cosdel unloaded or caused to be unloaded such shipping container holding Imagine once it reached the KSA Port in Jeddah.

64.     Upon information and belief, Cosdel then loaded or caused to be loaded that same shipping container holding Imagine onto a seaborn vessel bound for the U.S. Port in Long Beach, California.

65.     Upon information and belief, Cosdel transferred possession of Imagine to Passport in California for continued transportation to its final destination in Alamosa, Colorado.

66.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs do not know if Cosdel issued one or more bills of lading for the KSA ground or overseas portions of the inbound journey from KSA.

67.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs do not know what was indicated on such bill(s) of lading as the shipment's final destination.

68.     Because Cosdel has declined to provide Plaintiffs with relevant documentation, Plaintiffs are unaware of any of the terms in any bill(s) of lading issued by Cosdel for the inbound journey from KSA.

69.     Upon information and belief, Cosdel inspected or caused to be inspected the condition of Imagine prior to loading it onto the shipping container in Riyadh, once it was loaded onto the shipping container in Riyadh, and/or when it was unloaded from the shipping container in California.

70.     Upon information and belief, condition reports for Imagine were created during each of these inspections identifying all damage to the vehicle.

71.     Upon information and belief, the condition of Imagine when Cosdel took possession of it in Riyadh, KSA is shown on a condition report within the possession of Cosdel.

72.     Upon information and belief, the condition of Imagine when Cosdel took possession of it in Riyadh, KSA was the condition described in ¶ 46.

73.     Upon information and belief, the condition of Imagine when Cosdel delivered it to Passport in California is shown on a condition report within the possession of Cosdel.

74.     Upon information and belief, Imagine suffered additional damage during the KSA ground and overseas portions of the inbound journey from KSA.

75.     Upon information and belief, Imagine was in a poorer condition when Cosdel delivered it to Passport in California than that described in ¶ 46.

76.     On April 5, 2020, Passport delivered Imagine to Alamosa, Colorado.  On information and belief, Imagine's journey from KSA to Colorado lasted 129 days.

77.     Passport transported from California to Alamosa, Colorado in a car transport truck trailer.  Martin accepted delivery of Imagine, was present during the unloading of Imagine, and was issued a Passport bill of lading.  That Passport bill of lading is attached hereto as Exhibit C.

78.     The Passport bill of lading identifies Price Transfer as the shipper.  The Passport bill of lading identifies Carson, California as the shipment origin.  Upon information and belief, Carson, California is 11 miles from the U.S. Port in Long Beach.

79.     The Passport bill of lading indicates certain areas of damage to Imagine.  Upon information and belief, the Passport bill of lading was completed by the Passport driver in Alamosa, Colorado on April 5, 2020.  Upon information and belief, the Passport bill of lading reflects damage to Imagine observed in Alamosa, Colorado on April 5, 2020.

80.     Upon delivery to Colorado, Imagine was so damaged it could not be rolled out of the car transport truck trailer.  Martin worked with the delivery driver for approximately two hours to unload the vehicle and document the damage.

81.     Martin observed, documented, and discussed with the Passport delivery driver the following 28 additional items of damage:

        a.      cracks and lifting on passenger inner fender lower (engine compartment);

b.      cracks on driver lower inner fender (engine compartment);

c.      cracks on passenger lower rear inner fender (engine compartment);

d.      cracks around driver side turbo oil outlet;

e.      chip on frame near front passenger motor mount;

f.      major crack on underside of hood rear;

g.      crack on underside of hood front;

h.      crack next to hood bullet passenger side;

i.      scratch next to deck lid driver top;

j.      spot on rear bumper passenger side;

k.      crack in inner fender well, passenger side;

l.      chip on bottom of front cross member;

m.      cracks on inner fender well driver side;

n.      chip on frame under passenger front control arm;

o.      long gouge drag mark on inner frame rail, passenger side;

p.      long scratch on passenger side exhaust;

q.      long drag mark on outer frame rail, passenger side;

r.      chip on passenger side rocker;

s.      drag mark on outer frame rail, driver side #1;

t.      drag mark on outer frame rail, driver side #2;

u.      several cracks on rear inner bumper panel;

v.      heavy gouge and cracks on rear passenger lower quarter between tire and

bumper;

w.      rub on rear passenger inner wheel well;

x.      crack on passenger inner wheel well, front;

y.      evidence of tire rubbing on inside of passenger quarter;

z.      crack on passenger rear wheel opening;

aa.      broken control arm joint; and

bb.      rippling on passenger quarter panel.

82.    Upon information and belief, all of the damages identified in ¶ 81 occurred during the inbound journey from KSA.

83.    Upon information and belief, all of the damage identified in ¶ 81 occurred while Imagine was in the possession and control of Cosdel and/or Passport.

84.    Attached to this Complaint as Exhibit D is a series of photographs depicting the damages to Imagine identified in ¶¶ 46 and 81.

85.    The damages incurred by Imagine during transportation to and from the KSA Show render this vehicle a constructive total loss.

86.    Repair of the damages identified in ¶ 81 requires a complete disassembly and rebuilding of Imagine.

87.    Repair of the damages identified in ¶¶ 46 and 81 will take at least one year to complete.

88.    Repair of the damages identified in ¶¶ 46 and 81 will cost at least $772,734.

89.    The fact of refurbishment will fundamentally and permanently diminish the character, quality, and value of Imagine.

90.    Imagine cannot be restored to its pre-loss condition.

91.     Imagine will sustain an estimated $500,000 diminution in value due to the damages identified in ¶¶ 46 and 81, even if such damages are repaired.

92.     Continued time away from the automotive show circuit further devalues Imagine and creates lost opportunities for Plaintiffs.  Such opportunities include the chance to win additional automotive awards and the chance to sell Imagine at peak value.

93.     On April 7, 2020, Martin provided written notice to Bonnier, WWA, Passport, and Cosdel of all 28 additional items of damage identified in ¶ 81.

94.     WWA directed Martin to submit a claim form to Cosdel.

**Previous Communications Regarding Plaintiffs' Claim for Damages**

95.     On April 14, 2020, Martin submitted to Passport and Cosdel a completed Cosdel claim form.  That claim form was accompanied by a complete list of damages mirroring the allegations in ¶¶ 46 and 81, as well as a series of photographs mirroring those in Exhibit D.

96.     Cosdel accepted the claim and tendered it to its insurer.

97.     Hrehovcsik has been in regular communication with Cosdel's agents and insurer regarding Plaintiffs' claim for damages to Imagine since April 14, 2020.

98.     Hrehovcsik believed, based on the representations and actions of Cosdel's agents and insurer, that Cosdel's insurer was investigating Plaintiffs' claim and intended to resolve Plaintiffs' claim.  This belief is based on the totality of communications between Hrehovcsik and Cosdel's agents and insurer, including but not limited to the following:

        a.      On July 28, 2020, Cosdel's agent and/or insurer requested that Hrehovcsik provide a detailed estimate of Plaintiffs' losses.

      b.     On September 28, 2020, Hrehovcsik provided Cosdel's insurer with a detailed estimate and projection of repairs.

      c.     On October 26, 2020, Cosdel's agents and insurer inspected Imagine.

      d.     On January 27, 2021, Cosdel's agent issued his own estimate of repairs.

      e.     On February 17, 2021, Cosdel's insurer told Hrehovcsik that Cosdel was prepared to settle Plaintiffs' claim for a sum certain, which was substantially less than the actual value of Plaintiffs' loss.

99.     No one acting on behalf of Cosdel ever alerted Plaintiffs or their agents during the course of communications described in ¶¶ 95-98 that Plaintiffs' claims against Cosdel may be governed by COGSA, and thus subject to a one-year statute of limitation.

100.    The statute of limitation on Plaintiffs' COGSA claim against Cosdel for the 10 items of damage set forth in ¶ 46 expired on November 22, 2020.

101.    Plaintiffs did not know until they retained counsel on March 3, 2021, that the statute of limitation on Plaintiffs' COGSA claim against Cosdel for the 10 items of damage set forth in ¶ 46 expired on November 22, 2020.

102.    As set forth at ¶ 98, Cosdel's insurer was actively investigating Plaintiffs' claim on November 22, 2020, and had represented to Hrehovcsik that it was working to resolve Plaintiffs' claim.

103.    Hrehovcsik relied on Cosdel's representations that it was investigating Plaintiffs' claim and intended to resolve Plaintiffs' claim.

104.     No one acting on behalf of Cosdel ever alerted Plaintiffs or their agents that Plaintiffs may or would be barred from pursuing the 10 items of damage set forth in ¶ 46 after November 22, 2020.

**FIRST CLAIM FOR RELIEF**
**(Damages Under COGSA Against Defendant Cosdel re: the Outbound Journey to KSA)**

105.     Plaintiffs incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

106.     On or after September 12, 2019, Cosdel transported or caused to be transported Imagine from the U.S. Port in Long Beach, California to the KSA Port in Jeddah.

107.      On some date after September 12, 2019, but before November 22, 2019, Cosdel transported or caused to be transported Imagine from the KSA Port in Jeddah to the KSA Show venue in Riyadh, KSA.

108.     Plaintiffs never saw, signed, or had access to any bill(s) of lading governing the overseas or KSA ground portions of the outbound journey to KSA.

109.     Despite Plaintiffs' request, Cosdel has failed to provide any bill(s) of lading for the outbound journey to KSA.

110.     Plaintiffs are not bound by any provision in any bill(s) of lading governing the outbound journey to KSA, which purport to limit Cosdel's liability or Plaintiffs' choice of forum or venue.

111.     Upon information and belief, Cosdel issued a through bill of lading in California, which identified the KSA Show venue in Riyadh as Imagine's final destination.

112.     The O'Leary's bill of lading attached to this Complaint at Exhibit B indicates the condition of Imagine when Passport transferred possession of Imagine to Cosdel.

113.    Imagine was in "show perfect" condition when Cosdel took possession of it for the purpose of transporting it to KSA.

114.    On or about November 22, 2019, Cosdel delivered Imagine to the KSA Show Venue in Riyadh, KSA.

115.    When Cosdel delivered Imagine to the KSA Show venue in Riyadh, it was damaged in the manner described at ¶ 46.

116.    COGSA provides the exclusive remedy for damage to goods or cargo transported internationally.

117.    COGSA applies to the international intermodal transportation of cargo involving both overseas and ground components.

118.    Under COGSA, Cosdel is liable for all damages to Imagine during the overseas and KSA ground portions of the outbound journey to KSA.

119.    Cosdel proximately and directly caused damage to Imagine during the overseas and KSA ground portions of the outbound journey to KSA.

120.    As the direct and proximate result of the damage to Imagine caused by Cosdel, the character and quality of Imagine was fundamentally and permanently diminished.

121.    As the direct and proximate result of the damage to Imagine caused by Cosdel, Plaintiffs lost the opportunity to show Imagine in its pristine condition.

122.    As the direct and proximate result of the damage to Imagine caused by Cosdel, Plaintiffs lost the opportunity to sell Imagine at its peak value.

123.    As the direct and proximate result of all the damage to Imagine caused by Cosdel and/or Passport, Plaintiffs have suffered actual damages and losses of at least $1,272,734.

124.   Cosdel has been in communication with Plaintiffs regarding the damages and losses described at ¶¶ 46, 81, and 85-92 since April 7, 2020.

125.   Plaintiffs believed, based on the representations and actions of Cosdel's agents and insurer, that Cosdel's insurer was investigating Plaintiffs' claim for damages and was working to resolve Plaintiffs' claim for damages.

126.   COGSA contains a one-year statute of limitations.

127.   Plaintiffs discovered the 10 items of damage set forth in ¶ 46 on November 22, 2019.

128.   Cosdel never disclosed to Plaintiffs or their agents that the statute of limitations on any claim related to the 10 items of damage set forth in ¶ 46 expired on November 22, 2020.

129.   Cosdel is estopped by its own words and actions from asserting a time-bar defense to Plaintiffs' First Claim for Relief.

**SECOND CLAIM FOR RELIEF**
**(Damages Under COGSA Against Defendant Cosdel re: the Inbound Journey from KSA)**

130.   Plaintiffs incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

131.   On some date after November 28, 2019, but before April 5, 2020, Cosdel transported or caused to be transported Imagine from the KSA Show venue in Riyadh to the KSA Port in Jeddah.

132.   On some date after November 28, 2019, but before April 5, 2020, Cosdel transported or caused to be transported Imagine from the KSA Port in Jeddah to the U.S. Port in Long Beach, California.

133.     Plaintiffs never saw, signed, or had access to any bill(s) of lading governing the KSA ground or overseas portions of the inbound journey from KSA.

134.     Despite Plaintiffs' request, Cosdel has failed to provide any bill(s) of lading for the inbound journey from KSA.

135.     Upon information and belief, Cosdel issued a through bill of lading in Riyadh, KSA, which identified the U.S. Port in Long Beach, California as Imagine's final destination.

136.     Plaintiffs are not bound by any provision in any bill(s) of lading governing the inbound journey from KSA, which purport to limit Cosdel's liability or Plaintiffs' choice of forum or venue.

137.     Documentation showing the precise condition of Imagine when Cosdel took possession of it in Riyadh for the purpose of transporting it to California is within the possession, custody, and control of Cosdel.

138.     Despite Plaintiffs' request, Cosdel has failed to provide information that would reveal the precise condition of Imagine when it left Riyadh for California.

139.     Upon information and belief, the condition of Imagine when Cosdel took possession of it in Riyadh, KSA was that described in ¶ 46.

140.     Upon information and belief, Imagine incurred damages additional to those described in ¶ 46 during transport from Riyadh to California.  Such additional damages include some or all of the damage items set forth in ¶ 81.

141.     Upon information and belief, the Passport bill of lading attached to this Complaint as Exhibit C does not reflect the condition of Imagine when Cosdel delivered it to the U.S. Port in Long Beach, California.

142.     Documentation showing the precise condition of Imagine when Cosdel delivered it to the U.S. Port in Long Beach, California is within the possession, custody, and control of Cosdel.

143.     Despite Plaintiffs' request, Cosdel has failed to provide information that would reveal the precise condition of Imagine when Cosdel delivered it to the U.S. Port in Long Beach, California.

144.     Under COGSA, Cosdel is liable for all damages to Imagine during the KSA ground and overseas portions of the inbound journey from KSA.

145.     Upon information and belief, Imagine was damaged during the KSA ground and/or overseas portions of the inbound journey from KSA.

146.     As the direct and proximate result of the damage to Imagine caused by Cosdel, the character and quality of Imagine was fundamentally and permanently diminished.

147.     As the direct and proximate result of the damage to Imagine caused by Cosdel, Plaintiffs lost the opportunity to show Imagine in its pristine condition.

148.     As the direct and proximate result of the damage to Imagine caused by Cosdel, Plaintiffs lost the opportunity to sell Imagine at its peak value.

149.     As the direct and proximate result of all the damage to Imagine caused by Cosdel and/or Passport, Plaintiffs have suffered actual damages and losses of at least $1,272,734.

**THIRD CLAIM FOR RELIEF**
**(For Damages Under the Carmack Amendment Against Defendant Passport)**

150.     Plaintiffs incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

151.     On some date after November 28, 2019, but before April 5, 2020, Passport transported or caused to be transported Imagine from Carson, California to Alamosa, Colorado.

152.     The Passport bill of lading attached hereto as Exhibit C governs this portion of the inbound journey from KSA.

153.     Upon information and belief, Exhibit C does not reflect the condition of Imagine when Passport took possession of it in California.

154.     Upon information and belief, the condition of Imagine when it left California for Colorado was damaged, but not to the extent described in ¶ 81.

155.     Passport delivered Imagine to Alamosa, Colorado on April 5, 2020.

156.     When Passport delivered Imagine to Colorado, it was in the condition described in ¶ 81.

157.     The Carmack Amendment to the Interstate Commerce Act provides the exclusive remedy for damage to goods or cargo subject to intrastate transportation within the United States.

158.     Under the Carmack Amendment, Passport is liable for all damages to Imagine, which were incurred during the intrastate transport of this vehicle from California to Colorado.

159.     Upon information and belief, Imagine was damaged during interstate transportation from California to Colorado.

160.      As the direct and proximate result of the damage to Imagine caused by Passport, the character and quality of Imagine was fundamentally and permanently diminished.

161.     As the direct and proximate result of the damage to Imagine caused by Passport, Plaintiffs lost the opportunity to show Imagine in its pristine condition.

162.     As the direct and proximate result of the damage to Imagine caused by Passport, Plaintiffs lost the opportunity to sell Imagine at its peak value.

163.     As the direct and proximate result of all the damage to Imagine caused by Cosdel and/or Passport, Plaintiffs have suffered actual damages and losses of at least $1,272,734.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs SS Innerprize LLC and Gregory Don Hrehovcsik respectfully requests this Court enter judgment in their favor and against Defendants Martin E. Button d/b/a Cosdel International Transportation and Passport Auto Logistics, LLC, jointly and severally, for all damages and losses they sustained as a result of the damages to Imagine incurred during Defendants' transportation of this vehicle to and from the 2019 Riyadh Automotive Auction and Salon, including:

(A)     economic damages to compensate Plaintiffs for the cost to repair all damages to Imagine incurred during intrastate and/or international transport;

(B)     economic damages to compensate Plaintiffs for the difference between the pre-loss value of Imagine and the post-restoration value of Imagine;

(C)     economic damages to compensate Plaintiffs for the lost opportunity to show Imagine for automotive awards;

(D)     economic damages to compensate Plaintiffs for the lost opportunity to sell Imagine at its peak value;

(E)     the costs of bringing this action, including expert witness fees;

(F)     pre- and post-judgment interest; and

(G)     any other such relief as this Court may deem just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted this 2nd day of April, 2021.

HAILEY | HART PLLC

By:     *s/ Melissa A. Hailey*
        Melissa A. Hailey, CO Reg. #42836
        Elizabeth Hart, CO Reg. #46041
        383 Corona Street, Suite 319
        Denver, CO 80218
        720-400-7970
        melissa@haileyhartlaw.com
        liz@haileyhartlaw.com

        *Attorneys for Plaintiffs*